UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re:

KIMBERLY BRUCE

                                        Debtor.
-------------------------------------------------------------x
CITIGROUP INC. & CITIBANK, N.A.,

                                        Appellants,

          - against -

KIMBERLY BRUCE,

                                        Appellee.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 21-CV-7455 (CS)

<u>Appearances</u>:

Benjamin R. Nagin
Eamon P. Joyce
Jon W. Muenz
Sarah T. Goodfield
Sidley Austin LLP
New York, New York
*Counsel for Appellants*

Adam R. Shaw
George F. Carpinello
Boies Schiller Flexner LLP
Albany, New York

Charles Juntikka
Charles Juntikka & Associates LLP
New York, New York
*Counsel for Appellee*

<u>Seibel, J.</u>

          Before the Court are Appellants' motions for interlocutory appeal to this Court, (ECF

No. 3), and for certification of a direct interlocutory appeal to the Court of Appeals, (ECF No. 9

("Appellants' Br.")).  For the following reasons, the motion for certification of direct appeal to

the Court of Appeals is GRANTED, and the motion for interlocutory appeal in this Court is

DENIED without prejudice.

## I.    BACKGROUND

The Court recites only the facts and procedural history relevant to these motions.

### A.    Facts

In 2007, Appellee Kimberly Bruce incurred a debt with Appellants.  (Adv. Dkt. No. 39

("AC") ¶ 14.)[1]  She fell behind on payments and Appellants reported the account to credit

reporting agencies as "charged off."  (*Id.* ¶¶ 15-16.)  Appellee eventually filed for bankruptcy

and received a discharge on or about May 7, 2013.  (*Id.* ¶¶ 17-18.)  Appellants were informed of

the discharge.  (*Id.* ¶ 19.)  In September 2013, Appellee's credit report still reflected that her debt

to Appellants was "charged off," rather than discharged in bankruptcy, and in December 2013

she contacted the bank to ask that they remove the "charged off" notation in light of the debt's

discharge.  (*Id.* ¶¶ 20, 22-24.)  Appellants did not ask the credit reporting agencies to remove the

"charged off" notation from Appellee's report until March 25, 2014, (*id.* ¶¶ 26-27), after

Appellee had filed a motion to reopen the bankruptcy case in order to file a contempt motion

against Appellants, (*see* Bankr. Dkt. No. 9).

Appellee asserts that Appellants regularly leave the "charged off" notation on credit

reports even after discharge in bankruptcy as part of a "willful policy of attempting to lay a trap

for . . . Class Members until the point that they need an accurate credit report, and they cannot

---

[1] Citations to "Adv. Dkt. No. __" refer to the docket in the Adversary Proceeding *Bruce v. Citibank Inc.*, No. 14-08224 (Bankr. S.D.N.Y.), before Judge Robert D. Drain of the Bankruptcy Court for the Southern District of New York, from which this appeal is taken. Citations to "Bankr. Dkt. No. __" refer to the docket in the underlying bankruptcy case, *In re Kimberly Bruce*, No. 13-22088 (Bankr. S.D.N.Y.).

obtain such a credit report without paying on a discharged debt." (AC ¶ 9.) Appellee further asserts that Appellants, knowing of the Bankruptcy Code's prohibition on contacting discharged debtors, undertake this conduct to coerce payment. (*Id.* ¶ 10.)

### B.   Procedural History

On April 30, 2014, Appellee initiated the Adversary Proceeding, and amended her complaint on November 18, 2014. The Amended Complaint seeks to hold Appellants in contempt of the Bankruptcy Court's May 7, 2013 discharge order, as well as discharge orders protecting similarly situated debtors issued by other bankruptcy courts throughout the country. (AC ¶¶ 18, 79-80.) Appellee requests, on behalf of the putative class, declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.* ¶¶ 87-89.)

Appellants moved to compel arbitration on Appellee's original adversary complaint, and the Bankruptcy Court denied the motion on November 12, 2014. (Adv. Dkt. No. 38.) The defendants in two related cases – which Appellee states are based on "the same factual and legal claims," (ECF No. 12 ("Appellee's Br.") at 5) – also moved to compel arbitration; the Bankruptcy Court denied those motions and all three were appealed to other judges of this Court. One of those cases was eventually resolved on March 7, 2018, with the Bankruptcy Court's decision to deny arbitration affirmed in *Anderson v. Credit One Bank (In re Anderson)*, 884 F.3d 382 (2d Cir. 2018). The Bankruptcy Court's orders denying arbitration in this case and the other case on appeal were ultimately affirmed on June 16, 2020, in *Belton v. GE Capital Retail Bank (In re Belton)*, 961 F.3d 612 (2d Cir. 2020). Appellants unsuccessfully petitioned the Supreme Court for *certiorari*, and the case was returned to the Bankruptcy Court.

On April 13, 2021, the Bankruptcy Court so-ordered a joint stipulation by the parties setting a supplemental briefing schedule on Appellants' motion to dismiss the Amended

Complaint and strike or dismiss the class allegations. (Adv. Dkt. No. 123.) After supplemental briefing, the Bankruptcy Court held a lengthy hearing on Appellants' motion on July 22, 2021 and then ruled from the bench, denying the motion to dismiss in part and denying the motion to strike. (*See* ECF No. 10-1 ("Hr'g Tr.")). The Bankruptcy Court held that it did not categorically lack authority to adjudicate class claims for violations of discharge injunctions nationwide (the "nationwide class issue"), and also held that Appellee properly pleaded a cause of action for contempt under the standard established by the Supreme Court in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019) (the "*Taggart* issue"). On August 10, 2021, the Bankruptcy Court issued an Order formalizing its bench ruling. (ECF No. 1-1.) The instant appeal followed. Appellants ask this Court to certify a direct appeal of the Bankruptcy Court's Order to the Second Circuit under 28 U.S.C. § 158(d)(2), or in the alternative to hear their interlocutory appeal under 28 U.S.C. § 158(a)(3). (*See* Appellants' Br. at 1; ECF No. 14 ("Appellants' Reply") at 10.) On October 27, 2021, Appellee filed a consolidated opposition to both motions, (Appellee's Br.), and Appellants replied on November 10, 2021, (Appellants' Reply).

## II.    LEGAL STANDARD

Under 28 U.S.C § 158(d)(2), this Court[2] must certify a direct appeal of a bankruptcy court order to the Second Circuit if (i) the Order "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;" (ii) the Order "involves a question of law requiring resolution of conflicting decisions"; or (iii) immediate appeal of the Order "may materially advance the progress of the case or proceeding in which the appeal is taken."

---

[2] Because more than thirty days have elapsed since the filing of the notice of appeal, (*see* ECF No. 1), the matter is "pending" in this court and the motion must be made here. *See* Fed. R. Bankr. P. 8006(b), (f)(1).

28 U.S.C. 158(d)(2)(A); *see Weber v. United States*, 484 F.3d 154, 157 (2d Cir. 2007); *see also*

*Homaidan v. Sallie Mae, Inc.*, No. 19-CV-935, 2020 WL 5668972, at *2 (E.D.N.Y. Feb. 25,

2020) ("If a lower court determines that an enumerated circumstance exists, then it '*shall* make

the certification described in subparagraph (A).'") (quoting 28 U.S.C. § 158(d)(2)(B)) (emphasis

in *Homaidan*).  The Court of Appeals then "may in its discretion exercise, or decline to

exercise," jurisdiction over the direct appeal.  *Weber*, 484 F.3d at 157; *see* 28 U.S.C.

§ 158(d)(2)(A).

The Second Circuit has explained that direct appeal is "most appropriate" for cases

involving questions of law "not heavily dependent on the particular facts of a case, because such

questions can often be decided based on an incomplete or ambiguous record."  *Weber*, 484 F.3d

at 158.  Further:

> [W]e will be most likely to exercise our discretion to permit a direct appeal where
> there is uncertainty in the bankruptcy courts (either due to the absence of a
> controlling legal decision or because conflicting decisions have created
> confusion) or where we find it patently obvious that the bankruptcy court's
> decision is either manifestly correct or incorrect, as in such cases we benefit less
> from the case's prior consideration in the district court and we are more likely to
> render a decision expeditiously, thereby advancing the progress of the case.  On
> the other hand, we will be reluctant to accept cases for direct appeal when we
> think that percolation through the district court would cast more light on the issue
> and facilitate a wise and well-informed decision.

*Id.* at 161.

## III.  <u>DISCUSSION</u>

My analysis begins (and ends) with the nationwide class issue.[3]  Appellants argue first

that there is no controlling decision in the Second Circuit on this question of law.  They contend

---

[3] Because § 158 requires certification of a "judgment, order, or decree" that "involves" a
question of law as to which there is an absence of controlling authority, I certify for appeal the
Order as a whole, even though the Bankruptcy Court's order encompasses multiple issues.  I do

that the Second Circuit's commentary in *Belton*, in which the court said it was leaving for "another day" the question "whether a nationwide class action is a permissible vehicle for adjudicating thousands of contempt proceedings," *Belton*, 961 F.3d at 617-18, demonstrates that Judge Drain's Order involves an unresolved question in this Circuit, (Appellants' Br. at 9). Appellants also point to Judge Drain's remarks in his bench ruling, including his observation that "dicta" in *Belton* "cast considerable doubt . . . on whether any bankruptcy judge other that the bankruptcy judge that issued the discharge order has the power to consider a claim for violation of a discharge." (Hr'g Tr. at 131:10-21.) Judge Drain further stated that he "believe[s] at a minimum the appellate courts should hear that full rationale" – *i.e.*, that because bankruptcy courts use a form statutory injunction, an adverse judgment in one court will in effect bind the losing party nationwide – "before they make a sweeping decision like this." (*Id.* at 140:25-141:8.)

        I agree that both *Belton* and the comments cited by Appellants convincingly demonstrate that there is a lack of controlling authority on the issue on which the Bankruptcy Court ruled. *Belton* presents this issue as one that the Second Circuit is yet to address: "[W]e have not endeavored to address whether a nationwide class action is a permissible vehicle for adjudicating thousands of contempt proceedings, and neither our decision today nor *Anderson* should be read as a tacit endorsement of such." *Belton*, 961 F.3d at 617. Further, the Bankruptcy Court (in addition to the remarks highlighted by Appellants) commented that cases supporting Appellants' argument here "raise[d] a very close question," (Hr'g Tr. at 133:11); acknowledged, with regard

---

not reach the question whether the "*Taggart* issue" would qualify on its own for certification to the Second Circuit under § 158(d)(2). *See In re Gravel*, No. 11-10112, 2019 WL 3783317, at *3 (Bankr. D. Vt. Aug. 12, 2019) ("[I]f this Court certifies a direct appeal, the entire judgment, order or decree proceeds to the court of appeals, not only the questions worthy of certification.") (cleaned up).

to his analysis of the Bankruptcy Code as it pertains to this issue that "it may be decided that none of that matters," (*id.* at 139:3-5); and noted that this issue was "by far the most difficult one to deal with," (*id.* at 129:12-13).  All of these statements, and Judge Drain's professed hope that the Second Circuit will (when squarely presented with the issue) consider the reasoning he set forth, (*id.* at 140:25-141:8), would not make sense if the Second Circuit had already spoken authoritatively on this question.

Further, the Bankruptcy Court relied heavily on two opinions by Judge Stong of the Bankruptcy Court for the Eastern District of New York:  *Ajasa v. Wells Fargo Bank, N.A. (In re Ajasa)*, 627 B.R. 6 (Bankr. E.D.N.Y. 2021) and *Golden v. Discover Bank (In re Golden)*, 630 B.R. 896 (Bankr. E.D.N.Y. 2021).  These opinions provide a thorough discussion of the nationwide class issue presented here, and Judge Stong's conclusions primarily rely on the Bankruptcy Code itself and authority from other bankruptcy courts; neither *Golden* nor *Ajasa* purports to rely on controlling Circuit or Supreme Court precedent.  *See Ajasa*, 627 B.R. at 22-32; *Golden*, 630 B.R. at 917-27.  That neither Judge Drain nor Judge Stong pointed to controlling authority from the Circuit or Supreme Court further supports the conclusion that there is no such authority on this question of law.

Appellee attempts to sidestep this straightforward conclusion by pointing to controlling authority on several more general questions:  that bankruptcy courts have subject matter jurisdiction over all civil proceedings under the Bankruptcy Code, that claims for violation of a discharge injunction are "core proceedings" over which bankruptcy courts have subject matter jurisdiction, that bankruptcy courts generally have subject matter jurisdiction to issue sanctions, and that bankruptcy courts generally have jurisdiction to hear class actions under Rule 23. (Appellee's Br. at 10-11.)  But none of these uncontroversial propositions address the issue

raised by Appellants and discussed at length by the Bankruptcy Court:  whether these general grants of subject matter jurisdiction rebut the historical legal principle that only the issuing court has authority to enforce its injunction through contempt.  On that specific issue, Appellee has not presented controlling authority.

Appellee argues that 11 U.S.C. § 105(a) is "broader than the All Writs Act" and provides "controlling authority for the Court's power to adjudicate the class claims presented here." (Appellee's Br. at 11.)  But whether § 105 can be read to authorize Appellee's claims is specifically the undecided issue that the Second Circuit identified (but did not address) in *Belton*: "[W]e question whether a bankruptcy court would even have jurisdiction to hold a creditor in contempt of another court's order.  Most circuits that have considered the issue have rejected the notion."  *Belton*, 961 F.3d at 617; *see id.* at 618 ("[W]e leave for another day the issue of class certification.")

Further, *Taggart*, cited by Appellee, (*see* Appellee's Br. at 11), does not address this issue.  As the Second Circuit noted in *Belton*, there is language in *Taggart* that would appear to "buttress[]" the conclusion reached by the Fifth, Seventh, Ninth, and Eleventh Circuits that only the court that issues an injunction can enforce it, because "the contempt powers provided under sections 524(a)(2) and 105(a) 'bring with them the "old soil" that has long governed how courts enforce injunctions.'"  *Belton*, 961 F.3d at 618 (quoting *Taggart*, 139 S. Ct. at 1802).  While these statements in *Belton* are dicta, they are instructive in answering the question whether there is controlling authority on this question:  the Second Circuit presents the issue as an open one, yet to be squarely presented.

Nor does the language to which Appellee points in *Smith v. Woosley*, 399 F.3d 428 (2d Cir. 2005), constitute controlling authority on this question.  (*See* Appellee's Br. at 11.)

Appellee contends that *Smith* stands for the proposition that a district court may enforce an injunction entered by a different district court, but *Smith* only dealt with "the authority of a district court to issue an injunction under the 'relitigation exception' to the Anti-Injunction Act, 28 U.S.C. § 2283, to protect the judgment of another district court" from being relitigated in state court.  *Smith*, 399 F.3d at 429.  The *Smith* court did not even "rule definitively on the matter." *Id.* at 433.  Its finding on the facts there, that under a different statutory scheme one district court had the ability to protect another's judgment through the affirmative issuance of an injunction, might be worth considering in deciding whether a bankruptcy court may hold a creditor in contempt for violating another court's discharge injunction, but the former principle is not controlling as to the latter question.

The fact that cases involving similar nationwide class claims have proceeded to consensual judgment in this Court does not alter the conclusion that there is a lack of controlling authority on this issue.  (*See* Appellee's Br. at 12.)  As Appellants point out, the nationwide injunction issue was never raised by the settling parties in those cases, and the plaintiffs referenced litigation of this issue as one "risk" to be avoided through consensual settlement. (Appellants' Reply at 6 n.5 (citing Pl.'s Br. at 16, *Anderson v. Capital One Bank (USA), N.A.*, No. 19-cv-03981 (S.D.N.Y. Aug. 28, 2019), ECF No. 10; Pl.'s Br. at 15, *Haynes v. Chase Bank U.S.A., N.A.*, 18-cv-03307, (S.D.N.Y. Aug. 06, 2018), ECF No. 8; Pls.' Br. at 15, *Echevarria v. Bank of America Corp.*, 17-cv-08026, (S.D.N.Y. Feb. 15, 2018), ECF No. 11).)  Where the parties did not raise or brief the issue, the mere fact that the cases went forward and settled on a class basis does not alter the conclusion that the question is yet to be conclusively resolved by the Circuit.

Appellee also advances a reading of *Anderson* that is in direct conflict with how the Second Circuit explained its own decision.  Appellee argues that *Anderson* "expressly recognized and approved the continuation in bankruptcy court of class claims against a bank for violations of the discharge injunction on behalf of a nationwide class."  (Appellee's Br. at 12.) She points to the court's comments that "[t]he fact that Anderson's claim comes in the form of a putative class action does not undermine [the court's] conclusion" and "the class action nature of this case does not alter our analysis."  *Anderson*, 884 F.3d at 390-91.  But what *Anderson* concluded is that claims based on violations of discharge injunctions are not arbitrable.  It did not purport to decide the issue here.  And *Belton* stated plainly that *Anderson* should not be read to tacitly endorse the position that "a nationwide class action is a permissible vehicle for adjudicating thousands of contempt proceedings."  *Belton*, 961 F.3d at 617.  The *Belton* court reiterated this point, pointing specifically to the text from *Anderson* on which Appellee relies: "To be sure, *Anderson* noted that 'the class action nature' of the case did not alter the Court's conclusion.  But we read that language to refer to the Court's holding that the claims were not arbitrable, *not to the unpresented issue of class certification and bankruptcy court jurisdiction*." *Belton*, 961 F.3d at 617 n.2 (quoting *Anderson*, 884 F.3d at 391) (emphasis added).  Even if Appellee is right that *Anderson* is favorable to her position on the nationwide class issue, that does not make it controlling authority on a question it did not even come close to squarely addressing.[4]

---

[4] Other language in *Anderson*, however, is less favorable to Appellee.  For example, the Fifth Circuit interpreted *Anderson* as "limit[ing] enforcement of discharge injunctions through contempt proceedings to the originating court."  *Crocker v. Navient Solutions, L.L.C. (In re Crocker)*, 941 F.3d 206, 216 (5th Cir. 2019), *as revised* (Oct. 22, 2019).  Relying in part on the *Anderson* court's statement that "the bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated," *Anderson*, 884 F.3d at

In short, it is clear from this Court's own review of the relevant case law, and from Judge Drain's analysis, that there is no controlling Second Circuit (or Supreme Court) authority on the question whether the Bankruptcy Court has power to adjudicate contempt claims based on the violation of other courts' discharge orders.

Finally, although this is a determination for the Second Circuit to make, I note that this is a case that seems appropriate for direct appeal under the guidance in *Weber*. *See Weber*, 484 F.3d 157-58. Judge Drain squarely addressed this question, which he described as a "pure legal issue," (Hr'g Tr. at 130:25), and he was explicit that the issue was properly before him at the motion to dismiss stage and would not benefit from further discovery:

> I am persuaded . . . that, although a court at this stage in the litigation, i.e. the motion to dismiss stage, should rarely, if ever, grant a motion to strike a class action claim or allegation in the complaint, this is a proper instance where I should consider that issue, given that it appears there's no further discovery that would need to be taken as to this fundamental question of the court's power to consider, on a national class action basis, a claim or claims for violation of the discharge.

(*Id.* at 130:11-19; *see id.* at 131:1-3 (explaining that this issue "should be addressed now given Rule 23's directive to act promptly, where appropriate, with regard to class action claims or certification").)

---

390-91, the Fifth Circuit in *Crocker* held that "[t]he bankruptcy court erred in holding that it could address contempt for violations of injunctions arising from discharges by bankruptcy courts in other districts." *Crocker*, 941 F.3d at 216-17. The *Crocker* court's reading of *Anderson* supports the conclusion that *Anderson* does not clearly provide controlling authority one way or the other on this question. Further, *Belton* itself stated that "permitting a bankruptcy court to adjudicate compliance with another court's order appears to be in severe tension with *Anderson*'s reasoning" and that *Anderson*'s rationale that the Bankruptcy Code displaced the Arbitration Act – in part because "contempt proceedings involve considerations that the issuing court is uniquely positioned to assess" – seemed to be "anathema to a nationwide class action." *Belton*, 961 F.3d at 617. *Belton* thus makes abundantly clear that *Anderson* did not resolve the nationwide class issue in Appellee's favor.

Because I find that at least one of the three circumstances enumerated in § 158(d)(2)(A) is present – that the Bankruptcy Court's order "involves a question of law as to which there is no controlling decision" from the Second Circuit or the Supreme Court – the statute requires that I certify the Order for direct appeal.  *See* 28 U.S.C. § 158(d)(2)(B); *Homaidan*, 2020 WL 5668972, at \*2.  The parties have raised several other arguments that I do not address here, including the propriety of permitting an appeal of this order in light of the lengthy delays that have already occurred in this case; whether this issue concerns a matter of public importance; whether immediate appeal would materially advance progress in this case; and whether direct appellate review is appropriate in cases where there is an inter-Circuit split of authority.  These arguments can be made before the Second Circuit, which has discretion to refuse to hear the interlocutory appeal – discretion that this Court does not have in light of the conclusion that there is no controlling decision on the question of law presented by Appellants.  *See* 28 U.S.C. § 158(d)(2); *Homaidan*, 2020 WL 5668972, at \*2.

IV.   <u>**CONCLUSION**</u>

For the foregoing reasons, the motion to certify the Bankruptcy Court's order for direct appeal is GRANTED, and the Court certifies that the order "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States."  28 U.S.C. § 158(d)(2)(A)(i).  The motion for leave to proceed with an interlocutory appeal in this Court is denied without prejudice to renewal should the Second Circuit decline to accept the direct appeal.  The Clerk is respectfully directed to terminate the pending motions, (ECF Nos. 3, 9), transmit a copy of this Order to the Second Circuit, and close the case.  Should the Court of Appeals decline to accept the appeal, the parties may move to re-open the case in this Court.

**SO ORDERED.**

Dated:  December 27, 2021
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.